Good afternoon, Your Honors. May it please the Court, Robert Salzmer on behalf of the government. Welcome back. Thank you very much. It's a pleasure to be here as always, Your Honor. We're here, unfortunately, to assert that the District Court made an error and we ask that the case- How is this case any different than Bartholomew? Are you saying that the Supreme Court has come in and has basically taken the legs out of Bartholomew or Bartholomew doesn't apply here? Well, we think Bartholomew, we concede for purposes of this level of review that Bartholomew applies. And Bartholomew sets a rule that the particularity requirement is not satisfied even if the warrant is particular, if the document that makes it particular, the affidavit that's attached, does not arrive at the scene of the search. That's what Bartholomew says. And we agree for purposes of this argument that we made a mistake and that did not happen. That here the warrant was particular at the time that it was presented to and signed by the magistrate. But by the time it arrived at the two apartments where the search took place, because of the clerical mistake that was made, the affidavit was not there that described the items to be seized. So we have a Bartholomew error. What we have presented to this panel, and I say panel because I do believe that Bartholomew is on very shaky legs, as I think we say in our brief, but what we present to this panel is the argument that you cannot apply the exclusionary rule. And that we feel very confident about. With the Supreme Court... Is this case the exclusionary rule or a 1983 case? Well this is a criminal action. This is a, and that's an important, significant... Is that one of the differences you think that exists with respect to Bartholomew or not? Absolutely. It's a distinction with Bartholomew and more importantly with the Gros case that follows Bartholomew from the Supreme Court. Those are civil cases that need to define has there been a violation of the person's rights. They do not address the additional considerations that have to be considered as to whether evidence can be excluded in a criminal case. And so that is a crucial distinction. I take it Herring is very important to your analysis, right? Excuse me? Herring? The Herring case? Herring is extremely important. As well as other cases of this court that have followed Herring, particularly the Tracy case that was authored by Judge Ambrose. What Tracy says, and it just plays off of Herring, but a quote from Tracy is that, quote, isolated negligent acts on the part of the police do not warrant application of the exclusionary rule. And that's what we have here. We acknowledge that if Bartholomew... But here, I mean, Tracy was a case where the affidavit was attached to but not incorporated into the search warrant. And we said, look, that's not enough of an issue to say that there was operating in bad faith. But Bartholomew said, in no uncertain terms, we are telling you today that it is clearly established law in this circuit that in order to be particular, you have got to attach, do something that says what it is you're going to be searching. And if it's sealed, it's like 10 times zero is zero. That's the law in this circuit. GROH supports that. Now, clearly, they were 1983 cases and not cases where you're doing suppression of evidence. But I don't know how to get around it. Well, here's how. Well, first of all, just as an aside, I can talk about this more if there's time. GROH is an even more extreme case than Bartholomew, and we don't have here the error that was in GROH. The affidavit wasn't incorporated. In Bartholomew and here, the affidavit was incorporated. It didn't arrive at the scene of the search. I think you could have an interesting debate over whether the error in Fourth Amendment terms in Tracy or in this case was worse. Because in Tracy, what this Court holds, first of all, is that the affidavit was not incorporated. So what you have there is a general warrant at the time that it's signed. But it was attached. Well, it was attached, but it's not expressly incorporated, this Court says, at the part where it had to be incorporated, which is the description of the items to be seized. So at the time the magistrate signs the warrant in Tracy, he is not approving any specific list of items to be seized, which this Court cites correctly as a fundamental Fourth Amendment error. Here, the error does not happen at the magistrate stage at all. The essential purpose of the Fourth Amendment, which is to assure that a neutral magistrate approves the search and the list of items to be seized, was met in this case. The part that was not met was taking it to the scene. I think you can have an interesting debate. But the important thing about Tracy is what Tracy clearly says, like Herring and like other Supreme Court cases, is we still have to look at the nature of the mistake. We can accept that there's a Fourth Amendment error. The question, the additional question has to be asked, was it deliberate, was it reckless, was it grossly negligent? And in this case, what the record would suggest that there is nothing but simple negligence. The record establishes, and I think the district court agreed, that there's no history of this error ever happening in this district. This was a clerical mistake that was made. Everybody's aware of the requirement. I mean, the Fourth Amendment says that you have to describe with particularity the persons and items to be searched, seized and searched, or searched, in this case. If you don't have, if the items to be searched aren't attached, they're sealed, how can you possibly comply with particularity? Well, that's where it's important, Your Honor, I think, to break down the purposes of the particularity requirement. The purposes, we're told by the Supreme Court, are first and foremost to assure that the magistrate has approved the specific list of items that happened in this case. The subsidiary purposes are to assure that the officers are guided by the list when they execute the search, and to assure that the person being searched can monitor the police conduct. Well, we know the first of those subsidiary requirements was met in this case, as it was in Tracy, as the opinion says in Tracy, because the same affluent... But Groh hasn't been reversed by the court. No, but again, we're not talking, I don't believe we're talking about Groh. Well, Groh does say that unless the particular items described in the affidavit are also set forth in the warrant itself, or at least incorporated by reference, and the affidavit is present at the search, there can be no written assurance that the magistrate actually found probable cause. That's right, but in deciding whether this draconian exclusionary rule is applied in this case, we have to look at the nature of the mistake. And I keep saying, I'm not here to dispute that there was a mistake. There was. The... So analytically, analytically, we start off with, is the warrant valid? You're saying we're not even dealing with that. It was not valid, right? As of, according to Bartholomew, as of the time it was executed, there was a failure of the particular... Right. Then, analytically, the second step is, do we apply the exclusionary rule? Correct. And analyzing the error is going to be material to figure out whether the exclusionary rule should apply, right? That's exactly right. And what's very important, Judge Chigars, is that the Supreme Court has said over and over the fact that there was a mistake, the first stage of your analysis, is not the end of the analysis. We then look to whether the severe cost of enforcing the exclusionary rule is outweighed by the deterrent impact of enforcing the exclusionary rule. That was the district court's mistake here. The district court said, no, I'm not going to apply that balancing test. If we rule in your favor, aren't the consequences going to be that officers are going to say to themselves, you know what? I don't have to worry about it. Yeah. Don't have to worry about it. I mean, here, if it's conceded that the warrant on its face was not valid, and it's conceded that this was clearly established, the only thing you can do is say under Lyon that, you know what? Good faith mistake. Sorry about it. And then good faith mistake becomes a hole so big that you really begin to wonder here where the exclusionary rule, when's it going to apply? The Supreme Court, Your Honor, has tackled that exact question. And I can't say that the Court's been unanimous, but we follow the majority rule. And what the Supreme Court has said is isolated negligence will not get you there. If Your Honor's concern emerges, if officers were to look at this case, and I can tell you it's not going to happen. I mean, in terms of, I remember when we wrote Doe v. Groody that former Judge Chertoff on our court wrote, you know, his point at oral argument was that, you know, having done this, this is 101 that you have the items to be seized, described with particularity or in some way, either by attachment or whatnot, to your warrant. That's just so basic that if you don't do it, it's not negligence, it's gross negligence. If it's not gross negligence, it's intentional. Well, you're asking me two questions, and I'd like to answer them one by one. Counsel, counsel. Yes, sir. Well, while you're answering my colleagues' questions, and I'm sorry that I interrupted, I want you to know that I was on Bartholomew, and I still haven't heard anything from you that would suggest that we weaken Bartholomew. Because just part of one sentence, we now make clear what was heretofore not, quote, sufficiently clear, and hold that, generally speaking, where the list of items is to be on the face of the warrant, you're in deep trouble. Well, Your Honor, that is correct, that's the deep trouble, but the question before the court is, does that deep trouble include the exclusion of O11 from the criminal case? Well, I'm just saying right now, that's not in the, I didn't read the rest of the sentence. I'm just saying that. I understand, okay, again, I just don't understand how we can get around that, or the case cited by my colleague right now, Judge Ambrose. But I'm sorry I must have interrupted. You were going to begin saying you have two answers to Judge Ambrose's question. Well, no apology, of course, Your Honor. Let me try to answer all of the questions. With respect to Your Honor's question, Judge Al-Dassert, we are not asking this court to get around Bartholomew. We are not asking this court to not follow what Bartholomew holds. What we're asking it to address is what Bartholomew does not address, and that is, does the exclusionary rule apply in a criminal case when Bartholomew is not followed in one specific isolated instance? Bartholomew is a civil case that does not address that question. What does address that question is Herring and Tracy and other cases involving the application of the exclusionary rule. That's my answer to that. Now, if you want one sentence on if I were standing in front of you. But Herring was, I mean, the police acted on an arrest warrant from another county that had expired. They didn't know it at the time. That's right. I mean, so you can easily understand why you would say, okay, that's not gross negligence. That's clearly not intentional. But, you know, Grubbs, Davis, Davis, the search was conducted pursuant to a binding appellate court precedent at the time. I mean, they seem to be cases, maybe they're dealing with the fringe, the edges, of the exclusionary rule, and that's understood. But Bartholomew and Groh are just about as down the middle as it gets. Well, as I said before, if you're going to ignore them, you do it at great peril, as noted in Bartholomew. And as Judge Chertoff, former Judge Chertoff, said, I mean, this is 101. Your Honor, I think you have to look at the particular case. And in this case, the officer knew the requirement. He's obeyed the requirement. He relied on the U.S. Attorney's Office to comply with it. That didn't happen. I think to call this gross negligence or intentional is just an unfair reading of the record. The district court itself did not make that conclusion. The district court itself, I think you could say this was a factual finding, said, quote, the level of police culpability is low. The district court who saw this officer and heard his testimony. Mistakes get made. What's our standard of review as to finding on the low end? Well, finding is a factor reviewed for clear error. The ultimate legal determination is reviewed plenary. But people make mistakes. Prosecutors certainly make mistakes. And that's what happened here. And I've been standing at this very spot many times, unfortunately, over the years to acknowledge that reality. What the Supreme Court has told us is that a single mistake does not lead to exclusion of evidence. It does not outweigh the huge cost that's paid by enforcement of the exclusionary rule. On this record, and this gets back to one of the answers I wanted to give Your Honor. But you're saying here you have a search warrant with zero particularity. There's nothing attached as to what's to be searched. No. I think you have to look at the nature of the error, Your Honor. The main particularity requirement of the Constitution was satisfied. Is that what the Fourth Amendment says, with particularity? If it's zero, you're telling me that you can still say that, well, sorry, it was zero, there was nothing attached, but I didn't mean it. No. The main particularity requirement, Your Honor, was satisfied. The affidavit was before the judge. It was incorporated explicitly. It listed the items to be seized. But the actual warrant taken to the scene had nothing attached. Exactly. And that is what Bartholomew says. That's the error there. We suggest in our brief there's reason to question Bartholomew based on Grubbs. But we don't think we could say that to a panel in contrast to an in-bank court. But that was an anticipatory search, was it not? Right. But what Grubbs very clearly says, and there's language in Grubbs that one could argue really conflicts with the language in Groh, a civil case. Grubbs says there's no requirement that the warrant be presented to the person at the time of the search, at the very end of the Supreme Court's opinion. That completely undercuts the subsidiary rationales I've talked about for the particularity requirement. It may very well be when this issue is presented to the correct court that the particularity requirement was fully satisfied in this case. We have no case that's ever decided that. In fact, if you break it down, what happened here and what Bartholomew talks about, I would call an accompaniment requirement. The particularity requirement that we know the Fourth Amendment talks about was met. When the magistrate signed the warrant that incorporated the affidavit, it didn't accompany the warrant to the scene. And that's in sharp question. Every circuit court to address this factual context that we're dealing with here, of where even involving unincorporated warrants, which is worse than what we have here, but where a magistrate reviewed the items to be seized and that list just didn't arrive at the scene, there are now three or four circuits that have sided with the position that I'm advancing to the government that are cited in our briefs. I know my time is up, but if I could just add one more point, and of course address any other questions the Court has. Judge Ambrose, your question about what will happen here. What if we say this is okay, don't worry, you made a mistake, everything is all right. The answer to that is addressed in Haring as well. Haring says if there's evidence of systemic negligence, there's a different answer. If a party comes before this Court and shows that this is happening on a systemic basis, then the rule of Haring will not apply. But no record was established in this case that there's ever been another instance in this district, let alone a systemic problem. And I can represent to the Court that I don't know of a systemic problem. We have one mistake that was made really primarily by my office, and then the mistake that the officer didn't look over what he was handed because he relied on what my office did. This is isolated negligence. This is exactly what the Supreme Court was talking about in Haring. Haring, you can cast the facts however you like. You can say, oh. What you're saying is it can be basic negligence, whether on one or two levels. But if it's a one-off, we're okay. I don't care how fundamental it is. I don't care how basic it is. If it's just a one-off mistake, we win. I don't think I need to go that far. I think that where you have no evidence that the officer grossly abandoned his duties or did anything, gained any advantage, or there was any reason for him to do what he did, then, yes, simple negligence on one occasion, Haring teaches, is not a problem. The important thing about Haring, you can call it a database error or something like that. The fact of the matter is the man in Haring was arrested, was taken from his car and arrested and searched. But you can well understand, if you were a police officer in that case, why you go and you check and they say there's a warrant, okay, somebody made a mistake. What's this officer supposed to do? He's got to go and arrest him. Well, right, but it's not just the officer that made the mistake. Just as in here, it was the system surrounding him. There are other police agencies that were involved. The result of it was, if you want to talk about a textual violation of the Constitution, a man was arrested, he was searched, contraband was found, and he was jailed, and there was no warrant. There was a purely warrantless arrest, as it turned out. But it is easy to understand in this case that when you go and, you know, I'm in such a hurry that I just didn't have time to look at it, that just doesn't fly. And that's what he basically said here. You know, I was coordinating everything and it just, I don't know, it just wasn't there. But the question then the court has to address, and I think that's the fair question, is, is that gross negligence? Is that just a complete abandonment of any duty of care by a careless person? Judge Almasert has a final question. Yes, sir. I just want to say that this case is very important because, as our distinguished counsel has indicated, that the previous leading case was civil and this is criminal. So we have to make a policy judgment here to go by the exact letter of the Constitution, not an interpretation of the Constitution, the exact language. Are we going to, in criminal cases, go by that or saying there are other circumstances where this should not be enforced to the letter of the law? That's going to be a difficult policy decision that you are asking us to make here. Your Honor, it's a difficult policy decision, but it's been made. And my answer in one word is herring. Herring explicitly says, the Supreme Court says, that the fact that this Fourth Amendment was violated, strictly, specifically, textually, and any other way, is not the end of the inquiry. There then has to be this balance. And the Supreme Court makes the balance by saying that acts of isolated negligence do not warrant exclusion. And then the Davis case, which Judge Ambrose mentioned, the court repeated. Well, I don't understand. I don't understand. With all due respect of the Supreme Court, in a criminal case, where does negligence fit into this case? Because the Supreme Court has now said in many cases, Hudson, Herring, Davis, numerous cases, that negligence is the standard, that the exclusionary rule. We're not talking about the Constitution now. We're talking about the Supreme Court-crafted exclusionary rule in criminal cases. And the Supreme Court has said it only applies to deter deliberate, reckless, or grossly negligent conduct. That's the holding of Herring. That's the issue that we've presented before this Court, of whether we've met that standard. Why don't we hear from Mr. Greenberg, and then we'll get you back to me. Thank you very much, Your Honor. Do you have time reserved? Is that correct? I don't know if I remember to say time reserved. We'll give you some. We'll give you some. Mr. Greenberg. Good afternoon, Your Honor. Mark Greenberg, here from Michael Wright, and also on behalf of Randall Wright. Attenuation is the operative word in the context of the negligence. Here you have a textual violation of the Fourth Amendment. The warrant is bereft of any particularity. You have a definitive textual violation. But I think the point that Mr. Zosmar is making is that this was an isolated and clearly nonrecurring police omission. I don't know if that's true, because you have two warrants, both of which are bereft of any particularity, and you also do not have the attachment of Attachment B to the warrant or to the warrants that basically itemizes the things to be searched for. So you have at least on this particular day two warrants that contain two errors plus two warrants that neglect to attach either the affidavit of probable cause, but we've already dealt with that, that was sealed, but also more importantly, Attachment B, which itemizes the things to be searched for and also avoids the whole problem here of whether or not you don't have an attached affidavit because it's been sealed. But even beyond that, Your Honor, all the affiant had to do was to read the warrant, to read the warrant before he presented it to the magistrate. I recognize he said he had a lot of coordination to do, but don't lose sight of the fact that at the time that he presents it to the magistrate for the magistrate's review, he has no idea how long it's going to take the magistrate to review the warrant. He plainly had the opportunity when the warrant is given back to him by the U.S. Attorney's Office to even take a glance at it. Isn't this case only a bit different from Bartholomew? In Bartholomew, the executing officer knew that the incorporated items were sealed. And here, the officer, Taylor, Agent Taylor, T.E.Agent Taylor, thought, okay, yes, there was a sealed affidavit, but the items relating to B were attached and inadvertently they were not, or they were noted, the items to be searched. Well, except for the fact that the you don't have C, attachment B, on the face of the warrant. If this was only a situation where attachment B wasn't attached, but there was reference in the warrant itself to C, attachment B, then yes. But you have it compounded by the fact that the warrant itself, the face of the warrant itself, neglects to say C, attachment B, and you don't have attachment B attached to the warrant that itemizes the things to be searched. It's very simple here. All the affidavit had to do was to read the warrant in advance of presenting it to Judge Rappaport. He didn't do that. How do you respond to Mr. Zossmer's point, and to some extent I'm putting words in his mouth, but there's a balancing that needs to be done between the need, the policy need to deter bad police action, and the policy that we have that people who commit crimes should be punished for them. And unless it's systemic, if it is a one-off, if you will, that deterrence is clearly not as important, and in that balancing the need to punish criminals comes out ahead. I don't think you can lose sight of Judge Kennedy's concurrence in the Michigan case, the Harris case, I believe it is, where he says lower courts don't lose sight of the fact that this Fourth Exclusionary Rule is still a viable component of Fourth Amendment jurisprudence. The fact of the matter here is that I recognize that there are costs involved if you suppress the evidence. But at the end of the day, in searches and seizures, the buck stops with the affiant. And under Fourth Amendment jurisprudence, the exclusionary rule is designed to deter, and I would submit in this case, to also affirmatively require the affiant to do certain rudimentary things, one of which is to read the warrant before he presents it to a magistrate to see if there is a glaring deficiency. We're not talking about something, Your Honor, that is just tucked into the warrant somewhere that nobody could see with close scrutiny or because it's ---- No, as I said, this is as basic as it gets. So, I mean, that's the policy decision you have to make. Well, how do you respond to, as counsel pointed out, the district court actually made what could be considered a factual finding, that it's on the low end of culpability. Don't we need to credit that? I mean, in terms of a Herring analysis? I don't think that the low end of culpability might be from the standpoint of mendaciousness. I don't for a moment suggest that this affiant was mendacious in trying to trump up a warrant in order to execute it here. And that's what Judge Tangle felt the same. But that's not the ---- I don't think that mendacity is the test.  Is it reasonable for us to require our affiants to do the basic rudimentary thing of reading the warrant in advance? The other cases cited by the government, at least you have a situation where the same day, where in the Herring case the affiant came to realize that there was a mistake and corrected the mistake immediately. In the Hamilton case that the government claims is analogous to our case, the affiant immediately went to the judge the next day to say, I made a mistake here. Here is a modified warrant that contains the thing that I unintentionally omitted. And you can then say that your affiant has done everything he can to correct the mistake. Here, Agent Taylor did nothing. He did nothing. Mr. Greenberg, let me, because we have sort of time limits here today. I would just, the more I look at this, the more I'm wondering, how would you characterize Agent Taylor here, where he had been a longtime police officer and a DEA enforcement aide? He had prepared 30 to 35 affidavits of probable cause. Would you say that his conduct here rose to recklessly gross negligence? Would you say that? The answer is yes, by virtue of the fact that because of his experience, he would have known better. He should have known based upon the fact that he knows intimately that the particularity requirement is needed. Because he's done the 30 to 40 warrants, that he knows what the standards of Fourth Amendment jurisprudence are, that yes, his failure to even take the simple step of reading and double checking the warrant arises to gross recklessness, Your Honor. All right. The bottom line here. That being the case, you're home with the Supreme Court's language, saying that if it is gross recklessness or gross negligence, there is a serious problem. If I can address that, Your Honor. Okay. If I can address that. Okay. It is true there was language in the Heron case about mere negligence. But we don't have mere negligence here as far as I'm concerned. This defendant had an affirmative duty to read the warrant. And the fact that two warrants neglected to identify with particularity the items to be seized, the fact that two warrants neglected to attach, attachment B, that particularize the items to be seized, rises above mere negligence. But beyond that, there is an attenuation component to the mere negligence analysis, I suspect, of the Heron case and the Harris case. Thank you. And you don't have the attenuation here. You have, as a result of the act of the affiant, a textual violation of the Fourth Amendment. You've now come full circle. And that's a well-made point. Is there anything else you wish to add? No. Okay. Thank you very much. You're welcome. As I said before, Your Honor, I think this case is appropriately disputed over whether this was gross negligence or not. Isn't part of the problem in Groh, the Supreme Court chastised the executing officer for not having done even a, quote, cursory reading, close quote, of the warrant. Isn't that what happened here? Well, Groh involved a much more severe error, where the warrant did not incorporate anything at all. But all he had to do here was just look at it. Well, I agree. But I think to say that Groh didn't have to answer the next question that this Court has to answer, if an officer does not do that in the criminal context, is a gross negligence. And that's where I have strenuous disagreement with my friend, Mr. Greenberg. To say that an agent who, by all accounts, has served well and served ably and done well on so many occasions makes this one mistake on this one day, to call it gross negligence, as this Court has defined that term, I think it is just untenable. I take it there's nothing else in the record that would be indicative of any other mistakes he's made, right? No, none whatsoever. And to say two warrants. I would like to address the Court if I can. I think the defendants here. This is the appellate argument. If you were called at trial, it would be different, but it's not. To say that there's two warrants, Your Honor, means nothing. We know from the record that it was the same affidavit that was used and attached to two forms for two locations.  There just is nothing here to rise to the level, if the Supreme Court says in Herring that there's no gross negligence, I don't see how it can be done here. The last thing I want to say is I liked Your Honor's expression before. I'm looking at this from 10,000 feet, and I think that's what the Supreme Court is doing in Herring. It's looking at the whole picture here of enforcing the exclusionary rule. What really happened in this case when we stand back? The Fourth Amendment, the basic requirement was met. There was a warrant. It was particular. The magistrate approved what the person wanted to search for. But when you went out to do the search, the warrant literally, the old 10 times zero is zero. It was zero. It was not there, and the result of that was that the agents had to be governed by the warrant, but we know that they were, and the person had to know what was being searched for, and he had a copy of this within days. We have to weigh that against the impact of the exclusionary rule. The Supreme Court has said there's a huge cost in enforcing the exclusionary rule, and it's vividly depicted here where you have allegations of very serious criminal conduct involving an enormous amount. But the flip to that, as I said before, could be that the consequences are for future generations of officers. I don't even have to do the cursory reading. I don't have to. I can say it's sealed. I can just say it was a mistake, and it becomes a very slippery slope. But you would need a record to be established on that. The policy judgments here have been made, and the record in this case has been made, and it shows an isolated mistake. Thank you very much. Thank you both counsel for extremely well-presented arguments. We'll take the matter under advisement.